# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00966-COA

**ELLIS TURNAGE**                                                    **APPELLANT**

**v.**

**ELLIS CHRISTOPHER BROOKS, A MINOR,**                       **APPELLEES**
**AND ALEX JARRETT BROOKS, A MINOR, BY**
**MARY BROOKS, MOTHER AND ADULT NEXT**
**FRIEND**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/04/2014 |
| TRIAL JUDGE: | HON. EDWARD C. PRISOCK |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | WILLIAM O. LUCKETT JR. TAMEKIA ROCHELLE GOLIDAY |
| ATTORNEY FOR APPELLEES: | TERRENCE LADWAYNE HIGH |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | CHILD SUPPORT AWARDED |
| DISPOSITION: | AFFIRMED: 08/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Ellis Turnage and Mary Brooks had two sons out of wedlock, born in 1989 and 1994. In 2009, Brooks sued to establish paternity and secure support for the children. In June 2014, the chancery court entered an order requiring Turnage to pay child support and college expenses of the children. On appeal, Turnage contends that the chancery court should have dismissed the support claim as a sanction for what he alleges was perjury during Brooks's deposition. He also contends that college expenses should not have been awarded because

he had no viable relationship with the children, and that he should have been given various credits against his support obligations. We find no error and affirm.

**STANDARD OF REVIEW**

¶2. This Court employs a limited standard of review in domestic relations cases. *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010). "[Our] scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (¶6) (Miss. 2007). A chancellor's factual findings will not be disturbed unless manifestly wrong or clearly erroneous, or an erroneous legal standard was applied. *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011). As long as substantial evidence supports the chancellor's findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that he resolved all such fact issues in favor of the appellee. *Ferrara v. Walters*, 919 So. 2d 876, 881 (¶8) (Miss. 2005) (citing *In re Savell*, 876 So. 2d 308, 312 (¶4) (Miss. 2004)). Questions of law, on the other hand, are reviewed de novo. *Irving v. Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011).

**DISCUSSION**

**1. Sanctions**

¶3. In his first issue, Turnage argues the chancellor erred in not dismissing the complaint for child support based on what he contends are perjured statements made by Brooks in her

deposition, where she denied receiving child support payments from Turnage in the years prior to her filing suit. At trial, she acknowledged receiving money, but she contended that it was not child support.

¶4. The record contains no motion for sanctions, and the only suggestion by Turnage that sanctions should be awarded appears in his proposed findings of fact and conclusions of law submitted after the hearing. We find this issue procedurally barred because Turnage never placed the sanctions issue squarely before the trial court for decision. *See Lee v. Thompson*, 167 So. 3d 170, 180 (¶28) (Miss. 2014).

### 2. College Expenses / Legal Standard

¶5. In his next issue, Turnage contends that the chancellor erred in awarding college expenses for Alex, his younger son, because of the lack of a relationship between Alex and Turnage.

¶6. It is true that college support can be forfeited by a child whose "behavior toward, and relationship with the father, makes the child [un]worthy of the additional effort and financial burden that will be placed on [the father]." *Hambrick v. Prestwood*, 382 So. 2d 474, 477 (Miss. 1980). But in this case, the chancellor explicitly considered and rejected Turnage's argument on this point, finding that the relationship between Turnage and the children was "strained" since the lawsuit had been filed, but that there was insufficient evidence it had degenerated to the point where either child had forfeited college support. There is no indication that the chancellor applied an incorrect legal standard in reaching that conclusion.

3

¶7. Moreover, Turnage relies on a misstatement of fact in advancing this argument. He alleges on appeal that Alex had not spoken with him since the suit was filed in 2009 (at the time of the second day of trial, this would have been more than three years). But, in fact, Turnage backed away from that testimony on cross-examination, admitting he had spoken to Alex several times since he had gone to college and that they had made plans to meet when Alex visited Cleveland, Mississippi, where Turnage lived; but it had never happened. Otherwise, Turnage's testimony about his lack of a relationship with Alex was conclusory and perfunctory.

¶8. We find no merit to this issue.

### 3. Pell Grants

¶9. Turnage contends that the chancellor erred by failing to deduct Pell Grants received by the children from the amount he was ordered to pay for their college expenses. Turnage's argument on this issue is cursory, but he seems to fault the chancellor for not explicitly addressing the Pell Grants in his written findings of fact and conclusions of law.

¶10. The chancellor ordered Turnage to pay 80% of the ongoing expenses of the younger son and 100% of three semesters for the older son, who had attended college for approximately five semesters before reaching the age of majority.

¶11. Neither party requested additional findings of fact and conclusions of law under Mississippi Rule of Civil Procedure 52(a). Nonetheless, the Mississippi Supreme Court has held that findings are sometimes required. In *Carpenter v. Berry*, 58 So. 3d 1158, 1161 (¶14)

(Miss. 2011), it summarized a prior holding as follows:

> In *Tricon Metals*, the Court determined "whether and when a trial court should make findings of fact and conclusions of law" when not requested by either party. [*Tricon Metals & Services Inc. v. Topp*, 516 So. 2d 236, 237, 239 (Miss. 1987)]. We held that "where a case is hotly contested and the facts greatly in dispute and where there is any complexity involved therein, failure to make findings of ultimate fact and conclusions of law under Rule 52(a) will generally be regarded as an abuse of discretion." *Id.* at 239. This Court will remand for findings of fact and conclusions of law where it is not "obvious from a review of the record such that the absence of written findings may be excused." *Precision Interlock Log Homes, Inc. v. O'Neal*, 689 So. 2d 778, 780 (Miss. 1997).

¶12. Here, the facts about whether the children received Pell Grants were not in dispute, and their nature as grants rather than loans was discussed thoroughly during trial – in fact, the chancellor commented on the Pell Grants himself; there can be no question that the chancellor was aware of them. And while the chancellor did not expressly mention the Pell Grants in his judgment, he also did not order Turnage to pay the full college expenses of either child, despite Turnage's admitted ability to do so (and Brooks's clear inability except by taking loans). We can find no abuse of discretion in the chancellor's findings on the college expenses issue.

### 4. Child Support Credits

¶13. Turnage next argues that the chancellor erred in failing to give him credit for support he provided to the children in kind – a home he had purchased and renovated, where Brooks and the children had lived rent-free since 2002, and a vehicle he bought for his older son as a graduation present.

¶14. Turnage cites to a series of decisions where a noncustodial parent sought a credit against child support for support provided directly to the child. *See, e.g., Brewer v. Holliday*, 135 So. 3d 117, 120-21 (¶¶14-16) (Miss. 2014); *Smith v. Smith*, 20 So. 3d 670, 676 (¶24) (Miss. 2009); *Varner v. Varner*, 588 So. 2d 428, 434-35 (Miss. 1991); *Roberts v. Roberts*, 110 So. 3d 820, 825-26 (¶¶13-15) (Miss. Ct. App. 2013). These cases generally involve a noncustodial parent who took de facto custody of a child while still subject to an existing support order, who subsequently claims that the custodial parent was unjustly enriched by support for a child she did not actually support. *See, e.g., Brewer*, 135 So. 3d at 120 (¶13). There was no existing child support order here.

¶15. Turnage's argument seems to hinge on his assumption that anything provided by him to the children would have to be classified as child support and deducted from the monthly award. This is simply not the case under Mississippi law; we have routinely authorized separate awards of housing, transportation, medical care or insurance, college or private school expenses, and the like, as support in addition to monthly cash payments. *See Nichols v. Tedder*, 547 So. 2d 766, 768-69 (Miss. 1989) ("[R]egular child support is but one type of expense which the court may award for the care and maintenance of children.").

¶16. We find no merit to this argument.

### 5. Judicial Estoppel

¶17. In her complaint, Brooks alleged that Turnage had "voluntarily acknowledged paternity by his prior child support payments." On appeal, Turnage contends that this

statement should have precluded Brooks from taking an inconsistent position at trial on whether she had previously received child support payments (she claimed that the things Turnage had given her were gifts rather than child support).

¶18.    Turnage provides no explanation of how the fact that Turnage had provided two or more child support payments at some indefinite point in the past, even if deemed admitted, would have impacted the judgment he appeals.  Consequently we find that no reversible error has been shown under this issue.

¶19.    **THE JUDGMENT OF THE CHANCERY COURT OF BOLIVAR COUNTY, SECOND JUDICIAL DISTRICT, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

      **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**