# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00414-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF LOUIS LABASSE, JR., DECEASED: WENDY CHESTER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF LOUIS LABASSE, JR. | APPELLANT |

**v.**

| | |
|---|---|
| RUBY D. LABASSE | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/2016 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | G. CHARLES BORDIS IV |
| ATTORNEY FOR APPELLEE: | JAMES L. GRAY |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 09/12/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND CARLTON, JJ.

### CARLTON, J., FOR THE COURT:

¶1. Louis Labasse Jr. died on June 11, 2014. He was survived by his wife, Ruby Labasse, and his daughters from a prior marriage, Wendy Chester and Pamela Ortis. The Pearl River County Chancery Court granted Wendy's petition to probate her father's last will and testament and to be appointed executor of his estate. Throughout the probate proceedings, Ruby filed multiple petitions and motions requesting various relief. Aggrieved by the chancellor's grant of relief to Ruby, Wendy appeals and argues the chancellor erred by: (1) considering Ruby's petition to contest the will; (2) ruling upon the final accounting, the

petition to close the estate, and Ruby's objections to the final accounting; (3) awarding Ruby a one-third interest in Louis's estate; (4) ruling on Ruby's "Motion for Citation of Contempt" against Wendy; and (5) awarding Ruby attorney's fees. Through two motions filed at the same time as her appellate brief, Ruby raises additional issues for this Court's consideration: (1) whether Pamela should be dismissed as an appellant from this appeal; and (2) whether she is entitled to attorney's fees and expenses on appeal.

¶2. Upon review, we affirm the chancellor's judgment. We also find Ruby's motion to dismiss Pamela as an appellant is well taken, and we therefore dismiss Pamela in this matter. However, although Wendy's claims on appeal ultimately prove unsuccessful, we decline to find her appeal frivolous. We therefore deny Ruby's motion for attorney's fees and expenses on appeal.

**FACTS**

¶3. On May 22, 2014, less than a month before his death, Louis published and declared an instrument that purported to be his last will and testament. Subject to certain restrictions, the will left Ruby a life estate in real property that served as the couple's homestead. Ruby also received Louis's interest in the couple's joint checking account. Louis's daughters Wendy and Pamela received the remainder of Louis's property. On July 18, 2014, Wendy filed a petition to probate her father's will and to be appointed executor of his estate. On July 24, 2014, the chancellor entered an order to admit the will to probate in common form and to appoint Wendy executor.

2

¶4. On October 10, 2014, Ruby renounced the bequest and devise of the probated will and filed a spousal-share election pursuant to Mississippi Code Annotated section 91-5-25 (Rev. 2013). The following month, on November 20, 2014, Ruby filed a petition to contest the will and remove Wendy as executor, and she requested an accounting and a widow's allowance. The same day, Ruby also filed a petition to establish her widow's right to the possession and use of the couple's homestead.

¶5. On February 11, 2015, the chancellor entered an order on Ruby's various petitions. The chancellor found that Wendy had changed the locks on Louis and Ruby's homestead and had removed property from the homestead. In addition, the chancellor determined that, prior to Louis's death, Wendy used a power of attorney to write checks to herself and withdraw $24,795.98 in funds from Louis and Ruby's joint checking account. In her February 11, 2015 order, the chancellor (1) dismissed Ruby's petition to contest the will after acknowledging that Ruby had withdrawn the petition; (2) denied Ruby's petition for a widow's allowance; (3) denied Ruby's petition to remove Wendy as executor, subject to Wendy's compliance with the requirements the chancellor established in the order; (4) granted Ruby's petition to establish her right to the possession and use of the homestead; and (5) granted Ruby a spousal-share election and awarded her a one-third interest in Louis's estate. In addition to the other requirements, the chancellor ordered Wendy to return all the personal property she had removed from the homestead and to deliver the homestead keys to Ruby.

¶6. On May 18, 2015, Ruby filed a "Motion for Citation of Contempt" against Wendy, claiming that Wendy had willfully disobeyed the chancellor's February 11, 2015 order. Following a hearing on Ruby's contempt motion, the chancellor entered an agreed order that, among other things, directed Wendy, as estate executor, to file an inventory and accounting, place certain funds into the account for Louis's estate, and pay Ruby attorney's fees related to the contempt action.

¶7. On July 2, 2015, Wendy filed her inventory and accounting, to which Ruby timely objected. At a telephonic hearing, the chancellor ruled that, in lieu of ordering Wendy to deposit certain funds into the estate account, she would award Ruby a monetary judgment against Wendy. Thus, on September 2, 2015, the chancellor entered an order awarding Ruby $18,795.98 plus interest against Wendy for Wendy's failure to comply with the chancellor's earlier order. The chancellor reserved a ruling on Ruby's request for attorney's fees until the close of Louis's estate.

¶8. On November 24, 2015, after Wendy failed to comply with the chancellor's order to file a final accounting and close the estate, the attorney for the estate signed and filed the final accounting and the petition to close the estate and discharge Wendy as executor. On February 8, 2016, the chancellor granted the petition to close the estate. Aggrieved by the chancellor's grant of Ruby's various requests for relief, Wendy appeals.

**STANDARD OF REVIEW**

¶9. This Court declines to disturb a chancellor's factual findings unless the findings were

4

manifestly wrong or clearly erroneous or the chancellor applied an erroneous legal standard. *Turnage v. Brooks*, 213 So. 3d 103, 105 (¶2) (Miss. Ct. App. 2016). "As long as substantial evidence supports the chancellor's findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter." *Id.* (citing *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010)). However, we review questions of law de novo. *Id.*

## DISCUSSION

### I. Whether Pamela should be dismissed as an appellant.

¶10. As an initial matter, we address the issue raised in Ruby's motion that Pamela should be dismissed as an appellant from this appeal. Mississippi Code Annotated section 11-51-3 (Rev. 2012) provides for an appeal "from any final judgment of a circuit or chancery court in a civil case, not being a judgment by default, by *any of the parties or legal representatives of such parties . . . .*" (Emphasis added). The Mississippi Supreme Court has explained that "statutes which allow a 'party' to appeal, as a rule, limit the right to those who were original parties to the action or proceeding." *Ridgway v. Scott*, 237 Miss. 400, 405, 114 So. 2d 844, 845 (1959) (citation omitted). As Ruby correctly asserts, Pamela was never a party to this matter at the trial level and only purportedly became a party once the matter was appealed. We therefore grant Ruby's motion to dismiss Pamela as an appellant from this appeal. We next turn to a review of Wendy's various assignments of error before addressing the final issue Ruby raises in her second motion.

### II. Whether the chancellor erred by considering Ruby's petition to contest the will.

¶11. Wendy argues the chancellor erred by "considering, hearing, and adjudicating" Ruby's petition to contest the will. According to Wendy, error occurred because Ruby failed to join Pamela as a necessary party to the will contest. *See Garrett v. Bohannon*, 621 So. 2d 935, 937 (Miss. 1993) (recognizing that a decedent's heirs-at-law generally constitute necessary and interested parties to a will contest). However, as just discussed, the record reflects that Pamela was never a party to this matter in chancery court. In addition, the chancellor's February 11, 2015 order reflects that Ruby withdrew her petition to contest the will and that the chancellor thereafter dismissed the petition without prejudice. Thus, despite Wendy's assertions, the record fails to demonstrate that the chancellor ever considered, heard, or adjudicated the merits of Ruby's petition to contest the will. In fact, as Wendy herself admits, no hearing was ever conducted in open court, and "no evidence in the form of exhibits or live testimony on the record was presented." For these reasons, we find this assignment of error lacks merit.

**III. Whether the chancellor erred by ruling upon the final accounting, the petition to close the estate, and Ruby's objections to the final accounting.**

¶12. Wendy next argues that the chancellor erred by considering the final accounting, the petition to close the estate, and Ruby's objections to the final accounting. Wendy contends that the final accounting and the petition to close the estate were neither signed by her nor contained "a statement under oath [that] set forth the names and addresses of [Louis's] devisees, legatees[,] and [heirs-at-law.]" Wendy further argues that, after the filing of the

6

final accounting and the petition to close the estate, no summons ever issued for Pamela, Pamela was never served with process, no notice of hearing ever issued, and the chancellor never conducted a hearing. Finally, Wendy claims that, "[d]espite the fact that the heirs and creditors were never listed in the pleadings and never served with process, the [chancellor] proceeded without a hearing and entered a [']Final Order Closing the Estate[,'] which awarded Ruby . . . a one-third (1/3) interest in real estate."

¶13. The record shows that, pursuant to her February 11, 2015 order, the chancellor ordered Wendy, as executor, to file an estate inventory and accounting. However, Wendy failed to do so, which partially prompted Ruby to file her May 18, 2015 "Motion for Citation of Contempt." On June 8, 2015, the chancellor entered an agreed order directing Wendy to file the inventory and accounting "within ten . . . days[ or] on or before June 18, 2015[,]" and to "take all necessary steps to properly administer and close [the estate] by August 30, 2015." The chancellor then entered a second agreed order granting Wendy an extension until July 3, 2015, to file the inventory and accounting. On July 2, 2015, Wendy filed the inventory and accounting, to which Ruby timely objected. In her September 2, 2015 order on Ruby's objections, the chancellor awarded Ruby a judgment against Wendy and directed Wendy to "take all necessary steps to properly administer and close [the estate] by September 30, 2015." However, the final accounting and the petition to close the estate and discharge Wendy as the executor were not filed until November 24, 2015. As the parties agree, these documents were signed by the estate attorney alone.

7

¶14.    Our supreme court has explained that "[a]n appellant cannot complain on appeal of alleged errors which he invited or induced." *Ill. Cent. R.R. Co. v. Jackson*, 179 So. 3d 1037, 1044 (¶15) (Miss. 2015) (quoting *HWCC-Tunica Inc. v. Jenkins*, 907 So. 2d 941, 942 (¶4) (Miss. 2005)).[1]  The record reveals that Wendy repeatedly failed to comply with the chancellor's orders.  As executor, Wendy bore a responsibility to administer and close the estate, and she cannot now complain of errors she caused by failing to properly fulfill her duty.[2]  Furthermore, the record shows that Wendy failed to object—either contemporaneously or through posttrial motions—to the estate attorney signing and filing the final accounting and the petition to close the estate.  As our caselaw clearly states, "a trial judge cannot be put in error on a matter which was never presented to [her] for decision."  *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016) (citation and internal quotation marks omitted).  Accordingly, we find this assignment of error lacks merit.

**IV.    Whether the chancellor erred by awarding Ruby a one-third interest in Louis's estate.**

¶15.    Wendy next asserts that the chancellor erred by awarding Ruby a one-third interest in Louis's estate after allowing Ruby to renounce Louis's will and file a spousal-share election.

---

[1] *See* Miss. Code Ann. § 91-7-49 (Rev. 2013) (discussing the executor's duty to publish notice so creditors can probate their claims); *In re Estate of Carter*, 912 So. 2d 138, 144 (¶21) (Miss. 2005) (stating that an executor is an officer of the court, has a fiduciary relationship to all parties with an interest in the estate, and is held to the same standard of care as a general trustee).

[2] *See Harper v. Harper*, 491 So. 2d 189, 194 (Miss. 1986) (holding that an executor must act in good faith and employ the same vigilance, diligence, and prudence a person of intelligence and discretion would employ in the management of his own affairs).

8

¶16.  Section 91-5-25 allows a widow to renounce her husband's will and to instead elect her legal share of her husband's estate. As section 91-5-25 states:

> When a husband makes his last will and testament and does not make satisfactory provision therein for his wife, she may, at any time within ninety (90) days after the probate of the will, file in the office where probated a renunciation to the following effect, viz.: "I, A B, the widow of C D, hereby renounce the provision made for me by the will of my deceased husband, and elect to take in lieu thereof my legal share of his estate." Thereupon she shall be entitled to such part of his estate, real and personal, as she would have been entitled to if he had died intestate[.]

¶17.  As discussed, Wendy filed a petition in Pearl River County Chancery Court to probate her father's will, and the chancellor granted the petition on July 24, 2014. Within the ninety-day time period established by section 91-5-25, Ruby filed in the same chancery court a renunciation of the provision made for her in the will and her intention to elect her spousal share. Although the record before us contains no trial transcript, the chancellor's February 11, 2015 order acknowledged that she conducted a hearing on Ruby's renunciation and spousal-share election. The chancellor's order further found that Ruby had complied with section 91-5-25 in electing her spousal share. As a result, pursuant to section 91-5-25, the chancellor awarded Ruby a one-third interest in Louis's estate. *See* Robert A. Weems, *Mississippi Practice Series: Wills and Administration of Estates in Mississippi* § 6:6 (3d ed. 2003) ("Where the deceased spouse left two children, [the surviving spouse's legal share] is one-third." (citing Miss. Code Ann. § 91-5-25)).

¶18.  Despite Wendy's argument that the chancellor erred by awarding Ruby a one-third interest in Louis's estate, we find that substantial evidence supports the chancellor's

9

judgment. *See Turnage*, 213 So. 3d at 105 (¶2). As a result, we find this assignment of error lacks merit.

> **V.** **Whether the chancellor erred by ruling on Ruby's "Motion for Citation of Contempt" against Wendy.**

¶19. On May 18, 2015, Ruby filed a "Motion for Citation of Contempt" against Wendy, in Wendy's capacity as estate executor. The chancellor subsequently entered an order awarding Ruby attorney's fees against Wendy, as executor of the estate. On appeal, Wendy asserts the chancellor's order violated her individual due-process rights because she never received proper notice of the contempt action. She therefore asks this Court to reverse the chancellor's order.

¶20. As an initial matter, we note that Ruby argues her May 18, 2015 filing was a "motion." She further argues the filing was governed by and complied with the service requirements of Rule 5 of the Mississippi Rules of Civil Procedure. However, Ruby's "motion" actually constituted a petition for contempt and was therefore subject to the service requirements established in Rule 81 of the Mississippi Rules of Civil Procedure. *See Pearson v. Browning*, 106 So. 3d 845, 849 (¶¶15-18) (Miss. Ct. App. 2012).

¶21. "Calling a 'petition for contempt' a 'motion' and using motion procedures with contempt actions is incorrect according to Rule 81." *Pearson*, 106 So. 3d at (¶17) (citing *Harris v. Harris*, 879 So. 2d 457, 458 n.1 (Miss. Ct. App. 2004)). "Motions may be served by first-class mail." *Id.* at (¶18) (citing M.R.C.P. 5(b)). However, "[t]he procedural mechanisms that apply to motions do not apply to contempt matters." *Id.* (citing *Sanghi v.*

10

*Sanghi*, 759 So. 2d 1250, 1256 (¶30) (Miss. Ct. App. 2000)). "[I]n Rule 81 matters, a Rule 81 summons must be issued; otherwise, service is defective. Actual notice does not cure defective process." *Clark v. Clark*, 43 So. 3d 496, 499 (¶12) (Miss. Ct. App. 2010) (internal citations omitted).

¶22. The record here reflects that Ruby's attorney mailed a copy of the contempt "motion" to the estate attorney and that the chancery court issued a Rule 81(d) summons to Wendy in "care of" the estate attorney. These actions, however, failed to constitute proper service of process. Our caselaw and rules of civil procedure establish that Wendy, not the estate attorney, should have been served with Ruby's contempt "motion" and the Rule 81 summons. *See* M.R.C.P. 4; M.R.C.P 81; *Sanghi*, 759 So. 2d at 1255-58 (¶¶27-37). Having found that Ruby failed to properly serve notice to Wendy of her contempt action, we next determine whether Wendy waived the issue for appeal.

¶23. "It is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal." *Taylor v. Taylor*, 201 So. 3d 420, 421 (¶6) (Miss. 2016) (citations omitted). Mississippi caselaw has also repeatedly held that a defendant who appears and defends against the merits of a Rule 81 matter without asserting his or her objection to insufficient service waives the claim for appeal. *See Reasor v. Jordan*, 110 So. 3d 307, 311-12 (¶¶14-17) (Miss. 2013); *Dennis v. Dennis*, 824 So. 2d 604, 610-11 (¶¶16, 18) (Miss. 2002); *Chasez v. Chasez*, 935 So. 2d 1058, 1062 (¶12) (Miss. Ct. App. 2005). *See also Schustz v. Buccaneer Inc.*, 850 So. 2d 209, 213 (¶15) (Miss. Ct. App. 2003) ("[A]

11

defendant appearing and filing an answer or otherwise proceeding to defend the case on the merits in some way—such as participating in hearings or discovery—may not subsequently attempt to assert jurisdictional questions based on claims of defects in service of process.").

¶24. As previously discussed, Ruby filed her contempt "motion" against Wendy in her capacity as estate executor. The attorney for Louis's estate, on Wendy's behalf, then filed a response to Ruby's contempt "motion." The response presented a defense on the merits of Ruby's Rule 81 contempt action without asserting an objection to the sufficiency of the service of the "Motion for Citation of Contempt." The record further reflects that, along with the estate attorney, Wendy, as estate executor, electronically signed the response to the contempt "motion." The chancellor subsequently entered an order on June 8, 2015, which, among other things, directed Wendy to pay Ruby's attorney's fees related to the contempt action.

¶25. Despite participating in the response to the merits of Ruby's Rule 81 contempt action without objecting to defective service, Wendy still contends on appeal that the record shows a clear violation of her due-process rights. To support her claim, Wendy points to a letter the court reporter below sent to the Mississippi Supreme Court Clerk's Office, in which the court reporter stated she found no recorded proceedings in the instant matter. According to Wendy, this letter demonstrates "[t]here was definitely no hearing conducted or evidence received by the [chancellor]" related to the contempt action.

¶26. In addressing Wendy's assertions, we first note that, at the beginning of her June 8,

12

2015 order, the chancellor acknowledged that the matter before her had "come on for consideration at the joint request of the parties" and that she had reached her decision after "having been fully advised in the premises" of the matter. The chancellor then went on to award attorney's fees to Ruby and direct Wendy to take certain other specified actions. In addition, the chancellor entered a subsequent "agreed order" on July 2, 2015, in which she granted Wendy an extension to comply with the obligations imposed in the June 8, 2015 order. The record reflects that, without asserting any objection to the chancellor's previous order awarding attorney's fees, both Ruby's attorney and the estate attorney, on behalf of Wendy as the executor, signed the July 2, 2015 agreed order. In addition, in referencing the earlier order that awarded attorney's fees, the chancellor's July 2, 2015 order once again acknowledged that the matter before her had "come on for consideration at the joint request of the parties[.]"

¶27.    Upon review, we find that, despite the improper service of Ruby's Rule 81 contempt action, Wendy failed to raise the issue at her "first opportunity" or at any time thereafter in the proceedings before the chancellor. *See Chasez*, 935 So. 2d at 1062 (¶12); *S&M Trucking LLC v. Rogers Oil Co. of Columbia*, 195 So. 3d 217, 223 (¶24) (Miss. Ct. App. 2016). Wendy not only participated in responding to the merits of the contempt action without objecting to the defective service, but the estate attorney, on Wendy's behalf, also signed a subsequent agreed order without raising the issue. As a result, we conclude that Wendy has waived the issue for appeal. *See Reasor*, 110 So. 3d at 311-12 (¶¶14-17); *Dennis*, 824 So.

13

2d at 610-11 (¶¶16, 18); *Chasez*, 935 So. 2d at 1062 (¶12). We therefore find this argument lacks merit.

**VI.     Whether the chancellor erred by awarding Ruby attorney's fees.**

¶28.    In her June 8, 2015 order, the chancellor ordered Wendy, as estate executor, to pay $1,500 in attorney's fees related to Ruby's action for contempt. On appeal, Wendy now challenges the award of attorney's fees.

¶29.    Our caselaw establishes that contempt matters, including whether to award related attorney's fees, are matters largely within a chancellor's discretion. *See Gardner v. Gardner*, 130 So. 3d 1162, 1167 (¶21) (Miss. Ct. App. 2013); *McDonald v. McDonald*, 850 So. 2d 1182, 1192 (¶36) (Miss. Ct. App. 2002). "Awarding costs and attorney[']s fees because a contemptuous party has necessitated the holding of a hearing to enforce a prior order of the court is appropriate." *McDonald*, 850 So. 2d at 1192 (¶40) (citing *Mount v. Mount*, 624 So. 2d 1001, 1005 (Miss. 1993)). As this Court has explained:

> [I]n contempt actions, a chancellor is justified in awarding attorney's fees that are incurred in pursuing a contempt motion. Although chancellors are instructed to apply the factors in *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982), when granting or denying attorney's fees, this Court has held that establishment of the *McKee* factors is not necessary for a contemnee to recover attorney's fees where the contemnor has willfully violated a lawful court order. A specific finding of inability to pay is not required when attorney's fees are assessed against a party found to be in contempt.

*Vincent v. Rickman*, 167 So. 3d 245, 251 (¶22) (Miss. Ct. App. 2015) (internal citations and quotation marks omitted).

¶30.    In her May 18, 2015 "Motion for Citation of Contempt," Ruby asserted that Wendy

14

had willfully disobeyed the chancellor's February 11, 2015 order. After a hearing on the matter, the chancellor awarded Ruby $1,500 in attorney's fees for the necessity of filing the contempt action. Because the record indeed reflects that Wendy failed to comply with the chancellor's prior order, we find sufficient evidence to support the chancellor's award of attorney's fees related to Ruby's action for contempt. *See id.* at 252 (¶24). We therefore find no abuse of discretion. *Id.* As a result, this assignment of error lacks merit.

**VII.    Whether Ruby is entitled to attorney's fees and expenses on appeal.**

¶31.    As previously stated, along with her brief, Ruby filed two motions on appeal. In addition to requesting Pamela's dismissal as an appellant, Ruby argues she is entitled to attorney's fees and expenses because Wendy's claims on appeal are frivolous. Although we conclude that Wendy's assignments of error lack merit, we find that she raised a nonfrivolous issue. We therefore decline to find her appeal frivolous.

¶32.    Furthermore, in asserting her claim to attorney's fees and expenses on appeal, Ruby fails to cite any relevant statutory law, caselaw, or rules. *See* Miss. Code Ann. § 11-55-5 (Rev. 2012); M.R.A.P. 11; M.R.A.P 38. Instead, she cites two divorce cases in which the court awarded appellate attorney's fees either based on the husband's failure to prosecute the appeal or the wife's inability to pay. *See Bullock v. Bullock*, 201 Miss. 180, 183, 29 So. 2d 79, 79 (1947); *Hall v. Hall*, 77 Miss. 741, 741, 27 So. 636, 637 (1900). Our supreme court has previously declined to award attorney's fees where the party making the request cited no "authority beyond the bare code section and rule numbers" and failed to argue the point.

*Theobald v. Nosser*, 784 So. 2d 142, 147 (¶15) (Miss. 2001).[3]

¶33.   Because we find that Wendy asserted a nonfrivolous issue on appeal, and because Ruby failed to cite relevant authority to support her claim, we deny Ruby's request for attorney's fees and expenses on appeal.

¶34.   **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[3] *See also* M.R.A.P. 28(a)(7) ("The argument shall contain the contentions of [the party] with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.").